UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 21-cr-0254 (WMW/LIB) |
| Plaintiff, | |
| v. | ORDER ADOPTING REPORT AND RECOMMENDATION AS MODIFIED |
| Roberto Antwan Williams, | |
| Defendant. | |

---

Before the Court is United States Magistrate Judge Leo I. Bisbois's September 9, 2022 Report and Recommendation (R&R). (Dkt. 67.) The R&R recommends denying Defendant Roberto Antwan Williams's motion to sever counts and motions to suppress evidence. (Dkts. 23, 26, 48.) Williams filed timely objections to the R&R, and Plaintiff United States of America filed a timely response. For the reasons addressed below, the Court overrules Williams's objections, adopts the R&R as modified and denies Williams's motion to sever and motions to suppress.

## BACKGROUND

Williams is charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Count I of the indictment pertains to an assault that occurred on July 31, 2020. On that date, St. Cloud Police Officer Benjamin Eckberg was dispatched to the scene of a potential assault that might have involved a firearm. When Officer Eckberg arrived, he spoke with the alleged victim, Ousman Bah. Although Officer Eckberg had difficulty

understanding Bah at first because he was speaking quickly and with a heavy accent, Officer Eckberg eventually understood that someone had grabbed Bah during an altercation and Bah had observed a handgun during the alleged assault. Bah then pointed to a silver SUV stopped at a nearby red light and told Officer Eckberg that the vehicle had been present during the crime. Officer Eckberg then directed another officer, St. Cloud Police Sergeant Roger Baumann, to stop the SUV because it was leaving the area of where the crime had occurred and the victim stated there were potential witnesses or involved parties in the vehicle. Neither Office Eckberg nor Sergeant Baumann observed any traffic violations before Sergeant Baumann initiated the traffic stop.

Sergeant Baumann stopped an approached the vehicle, in which he observed two occupants. Sergeant Baumann asked the driver, a woman later identified as Bianca Ellison, to provide her license and insurance information. Sergeant Baumman also observed a man in the front passenger seat, later identified as Williams, who was shaking and holding his hands up in the air. Sergeant Baumann asked both Ellison and Williams where they were coming from. Ellison responded that they were coming from the Speedway gas station. Sergeant Baumann found this response unusual because, prior to initiating the investigatory stop, he had observed the SUV drive past the Speedway gas station without stopping. Sergeant Baumman also smelled marijuana emanating from inside the SUV.

While Sergeant Baumann was speaking to Ellison and Williams, Officer Eckberg obtained more information from Bah, who stated that he was assaulted by a black male with dreadlocks who was wearing a white t-shirt and pajama pants. Officer Eckberg relayed this description to Sergeant Baumann, who identified Williams as matching the

2

physical description that Bah provided. St. Cloud Police Officer Dwayne Bergsnev, who had arrived at the scene, detained Williams while Sergeant Baumann continued to speak with Ellison. After Ellison complied with Baumann's request to step out of the vehicle, Baumann observed a small plastic bag on the driver's side floorboard which he believed to be narcotics. Baumann then detained Ellison as well.

Shortly thereafter, Officer Eckberg arrived on the scene with Bah, who identified Williams as the man who assaulted him. Williams was then placed under arrest. Officer Eckberg testified that, after Williams's arrest, officers searched the SUV and recovered a black Smith & Wesson 9-millimeter handgun in the passenger glove box.

Count II of the indictment pertains to Williams's alleged possession of a firearm arising from the November 13, 2020 death of D.P., a five-year-old child. In November 2020, St. Cloud Police Officer Ryan Ebert received a report that a five-year-old child had been brought to St. Cloud Hospital by his mother, Bianca Ellison, with a gunshot wound to his head. The child was pronounced dead at the hospital.

St. Cloud Police interviewed Ellison and her fiancé, Williams, who recounted going to the store when Williams received a call from his daughter asking them to come home because Ellison's son, D.P., had a bloody nose. When Ellison and Williams returned to the residence, they found D.P. with a "busted-up face" in Ellison's bedroom. Ellison transported D.P. to the emergency room. Ellison subsequently denied having any knowledge of firearms in the residence.

During the investigation, the St. Cloud Police sized Ellison's vehicle and Williams's LG smartphone. The St. Cloud Police also conducted an emergency sweep of Ellison's

3

residence and reviewed a neighbor's security camera footage, which showed Williams placing a black backpack in a nearby garbage bin. The St. Cloud Police interviewed Williams's daughter, K.G., who reported that she found a purple and black firearm next to D.P. in the bedroom, gave the firearm to Williams and observed Williams leaving the residence with the firearm.

St. Cloud Police obtained and executed a search warrant at Ellison's residence and recovered from a garbage bin two firearms, including a purple and black handgun that matched the description K.G. provided. The location of the garbage bin where the guns were found matched the location on the video surveillance where Williams placed the backpack. Suspected cocaine, ecstasy, and K2 were found in two locations—inside the residence and outside the residence in a backpack recovered from the garbage bin. Officer Ebert described two firearms found in the garbage bin, including a purple and black firearm identified as a "Taurus G2c with serial number ABH754337," which had been stolen in October 2020.

Officer Ebert then applied for a search warrant for Williams's cell phone "to locate evidence of [Williams] gaining possession of the gun [involved in the November 13, 2020 shooting] and the possession of the drugs located with the firearm." After concluding that there was probable cause to believe that evidence of a crime would be found on Williams's phone, a Minnesota District Court judge issued a search warrant on November 16, 2020, authorizing a search of the phone's contents. The warrant allowed officers to search:

> Any and all information stored within the cellular phone, including but not limited to assigned telephone number, stored contact information such as names, numbers, and email

> addresses, incoming/outgoing calls and text messages, photographs and videos, Internet and browsing history, and all information as it relates to social media communication and any data included within stored applications. Internally stored data devices, including but not limited to SIM card(s) between 10-22-20 and 11-16-20.

St. Cloud Police extracted and reviewed the contents of Williams's phone.

## ANALYSIS

The Court reviews *de novo* those aspects of an R&R to which a defendant specifically objects, *see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam), and reviews for clear error any aspect of an R&R to which a party does not specifically object, *see* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59; *United States v. Newton*, 259 F.3d 964, 966 (8th Cir. 2001); *accord Grinder*, 73 F.3d at 795.

Williams filed three pre-trial motions addressed in the R&R. First, Williams seeks to sever Counts I and II of the Indictment because the two counts are unrelated. Second, Williams seeks to suppress evidence obtained during the July 31, 2020 investigatory stop, arguing that the police lacked reasonable suspicion to stop the vehicle. Third, Williams seeks to suppress evidence derived from his cell phone, contending that the warrant authorizing the search was insufficiently particularized. On September 9, 2022, the magistrate judge issued an R&R recommending that each of Williams's motions be denied. Williams filed timely objections to the R&R, to which the United States filed a timely response. The Court addresses each motion in turn.

I.      **Motion to Sever Counts**

The R&R recommends denying Williams's motion to sever Counts I and II of the indictment because the two counts are sufficiently related to justify joinder. Williams objects on two grounds. First, Williams argues that, because the evidence in the two cases does not sufficiently overlap, joinder is improper. Second, Williams asserts that even if joinder is otherwise proper, joinder is unfairly prejudicial because the second count involves the death of a child. The United States disputes both arguments, asserting that the magistrate judge correctly assessed whether joinder is appropriate in this case. Each argument is addressed in turn.

A.     **Joinder Under Rule 8(b), Fed. R. Crim. P.**

Williams objects to the R&R's conclusion that joinder is permissible under Federal Rule of Criminal Procedure 8(b), contending that the two incidents are unrelated and do not involve overlapping evidence.

An indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the *same or similar character*, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a) (emphasis added). When applying the "same or similar character" standard, courts have found that the joinder of offenses is proper when the counts "refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994) (internal quotation marks omitted). Rule 8 favors joinder to promote the

"efficient administration of justice." *United States v. Taken Alive*, 513 F.3d 899, 902–03 (8th Cir. 2008).

Both counts of the indictment charge Williams with the same offense: being a felon in possession of a firearm. Although Williams asserts that the evidence for both counts does not overlap because each count involves a different firearm possessed in a different location on a different date, both charges involve the same factual predicate of Williams possessing a firearm when prohibited from doing so because he has been convicted of a felony offense. *See United States v. Garrett*, 648 F.3d 618, 625 (8th Cir. 2011) (finding claims sufficiently related to support joinder when both counts charged defendant with being a felon in possession of a firearm). In addition, the two charges rely on overlapping evidence that the United States intends to use to prove its case, including the underlying conviction that classifies Williams as a felon. Accordingly, these claims are sufficiently related to justify joinder under Rule 8.

Nor are the two counts too far apart in time to preclude joinder. Courts have found joinder proper when the offenses in question occurred with less temporal proximity than is present here. *See, e.g.*, *id*. (affirming joinder of counts when offenses were 15 months apart); *United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001) (finding joinder proper when offenses occurred one year apart); *United States v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986) (holding 17-month period between offenses supported joinder). Here, the allegations giving rise to Count I and Count II are separated by approximately three months, which is far less than the period between offenses that supported joinder in other cases. Therefore, joinder of both counts is proper under Rule 8. *See* Fed. R. Crim. P. 8(a).

### B. Prejudice Under Rule 14(a)

Even if joinder is appropriate under Rule 8, Williams argues, the magistrate judge nonetheless erred because Williams will be unfairly prejudiced by the joinder of both counts of the indictment. Williams contends that, because Count II involves the death of a child, the risk that jurors will use evidence of his prior conviction for impermissible propensity or character purposes is heightened, as is the risk that jurors will be unable to set aside their emotional reactions. The United States responds that Williams has not met his "heavy burden" for justifying severance and that limiting instructions are sufficient to cure any potential prejudice Williams might face.

Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "A motion to sever counts for trial is committed to the district court's discretion." *United States v. Brown*, 653 F.3d 656, 662 (8th Cir. 2011). However, "[i]f joinder is proper under Rule 8, the defendant seeking severance has the *heavy burden* of demonstrating that a joint trial will impermissibly infringe his right to a fair trial." *United States v. Warfield*, 97 F.3d 1014, 1019 (8th Cir. 1996) (emphasis added). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant]

would have had in a severed trial." *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996).

Here, Williams's objections fail to satisfy his heavy burden of demonstrating that he will suffer unfair prejudice if the two counts in the indictment are not severed. Williams does not explain with specificity how the existence of a child victim in one case will deprive him of an appreciable chance of an acquittal in the other, outside of generally asserting that jurors will feel strongly about the death of a child and these feelings may influence their verdict. This generalized speculation is insufficient to justify severance. And notably, Williams does not address the R&R's conclusion that proper limiting instructions are sufficient to cure any potential prejudice. *See United States v. Wadena*, 152 F.3d 831, 847–50 (8th Cir. 1998) (affirming denial of a motion to sever when limiting instructions were given to the jury to avoid any potential prejudice).

In light of the heavy burden on Williams, as well as the general preference for joint trials, *see Richardson v. Marsh*, 481 U.S. 200, 209–10 (1987), this Court finds that severance of Williams's charges is not warranted. Accordingly, this Court overrules Williams's objections and adopts this portion of the magistrate judge's R&R.

**II.     Motion to Suppress Investigatory Stop Evidence**

The R&R also recommends denying Williams's motion to suppress all evidence obtained during the July 2020 search of the SUV transporting Williams. The magistrate judge erred in recommending the denial of his motion to suppress, Williams argues, because the officers lacked reasonable suspicion that Williams or Ellison had committed a

crime when the officers stopped the SUV.[1]  The United States disagrees, arguing that suppression of the evidence seized during the search of the SUV is unwarranted because the stop was constitutionally permissible.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Evidence obtained during a search or seizure conducted in violation of the Fourth Amendment must be suppressed.  *Segura v. United States*, 468 U.S. 796, 804 (1984).  A warrantless seizure is *per se* unreasonable, subject to certain specifically established and well-delineated exceptions.  *United States v. Rush*, 651 F.3d 871, 875–76 (8th Cir. 2011).

An investigative traffic stop does not violate the Fourth Amendment when the police have reasonable suspicion that the vehicle's occupants are involved in criminal activity.  *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999); *see also Terry v. Ohio*, 392 U.S. 1, 30–31 (1968).  Reasonable suspicion exists when, based on the totality of the circumstances, an officer has "a particularized and objective basis for suspecting legal wrongdoing."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted).  Although reasonable suspicion is more than a hunch, "the Fourth Amendment only requires that police articulate some minimal, objective justification for an

---

[1]   As the R&R observes, Williams is making a "fruit of the poisonous tree" argument. The evidence seized during the search of the SUV should be suppressed, Williams contends, because it flowed from the initial unlawful stop of the SUV.  Because this argument turns on whether the initial stop of the SUV was permissible, rather than what happened after the vehicle was detained, the Court's inquiry focuses on the initial stop of the SUV.

investigatory stop." *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004); *see also United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (explaining that officers have substantial latitude in interpreting and drawing inferences from factual circumstances). Notably, reasonable suspicion does not require an officer who lacks the precise amount of information necessary to meet the probable cause standard to allow a suspected criminal to escape; instead, a brief stop of a suspicious individual, so as to determine the individual's identity "or to maintain the status quo momentarily while obtaining more information," may be the most reasonable response. *Adams v. Williams*, 407 U.S. 143, 146 (1972).

Officer Eckberg testified that, prior to ordering the detention of the SUV, he was aware that the SUV held persons who were either "witnesses or other involved parties," who had been present at the scene of an alleged assault involving a firearm. Although the victim had not yet identified Williams as his assailant, Officer Eckberg knew enough from the initial description of the incident, the victim's identification of the vehicle as present at the time of the assault and the vehicle's location nearby the crime scene to raise concerns that the vehicle's occupants were somehow involved in the assault.[2] Officer Eckberg's knowledge provides the minimal, objective justification necessary for an investigatory stop. *Cf. United States v. Juvenile TK*, 134 F.3d 899, 903 (8th Cir. 1998) (finding reasonable

---

[2] Although Officer Eckberg conceded at the evidentiary hearing that Bah had initially told him that no one in the car assaulted him, he subsequently clarified on re-direct examination that he was not confident in Bah's statement and did not fully understand whether the occupants of the vehicle (Ellison and Williams) were witnesses or suspects in the assault at that time. Given Officer Eckberg's concern that the vehicle's occupants may have been involved in the assault and the additional supporting evidence described above, Officer Eckberg articulated a sufficient minimal justification to demonstrate that the stop was supported by reasonable suspicion. *See generally Fuse*, 391 F.3d at 929.

11

suspicion of criminal activity that justified an investigative stop based on the vehicle's temporal and geographic proximity to the crime scene). Moreover, police officers may detain a suspicious individual to "maintain the status quo momentarily while obtaining more information." *Adams*, 407 U.S. at 146. The stop at issue here detained Williams long enough to allow Officer Eckberg to obtain a physical description of the assailant and confirm that Williams matched that physical description. Accordingly, the Court finds that Sergeant Baumann's seizure of the SUV was supported by reasonable suspicion.

Citing *Illinois v. Lidster*, the R&R concludes that, even if Sergeant Baumann did not have reasonable suspicion, the stop was permissible. *See* 540 U.S. 419, 424 (2004). In *Lidster*, the Supreme Court of the United States held that the use of police checkpoints to obtain information from the public regarding a particular crime that had been committed several days prior did not violate the United States Constitution. *Id.* at 428. In his objections to the R&R, Williams argues that *Lidster* does not apply to the officers' conduct in this case because, here, the officers conducted an investigatory stop of a single vehicle, rather than deploying a broader means of stopping all vehicles arriving at a checkpoint. The United States responds that *Lidster*'s holding is not predicated on the existence of a roadblock. Instead, *Lidster*'s holding pertains to the analogous police practice of stopping a pedestrian on the street to ask them for any information he or she might possess.

However, because this Court concludes that the stop of the SUV was supported by reasonable suspicion, whether *Lidster* extends to suspicionless searches of a particular vehicle need not be addressed. For these reasons, the Court overrules Williams's objections and adopts the R&R as modified.

### III.    Motion to Suppress Cell-Phone Search Evidence

The R&R recommends denying Williams's motion to suppress all evidence stemming from the search of his cell phone. The magistrate judge agrees with Williams that the search warrant was overly broad. However, the R&R recommends finding that the good faith exception to the exclusionary rule applies here. *See United States v. Leon*, 468 U.S. 897 (1984). Williams contends that, because no reasonable officer could believe the warrant was sufficiently particularized, the good-faith exception to the exclusionary rule does not apply and suppression is warranted. The United States does not dispute the R&R's conclusion that the warrant was facially overbroad. But the R&R properly determines that the good-faith exception to the exclusionary rule applies in this case, the United States argues.

A law enforcement officer may obtain a search warrant only "upon probable cause, supported by Oath or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*." U.S. Const. amend. IV (emphasis added). "The [F]ourth [A]mendment requires that a search warrant's description of the evidence to be seized be sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized." *United States v. Frederickson*, 846 F.2d 517, 519 (8th Cir. 1988) (internal quotation marks omitted). The purpose of this requirement is to prevent "a general, exploratory rummaging in a person's belongings." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (internal quotation marks omitted).

13

As the Fourth Amendment includes no enforcement provision, the Supreme Court has created an exclusionary rule that, when applicable, prohibits the use at trial of evidence that has been improperly obtained. *Herring v. United States*, 555 U.S. 135, 139 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 398 (1914)). Evidence obtained during a search or seizure conducted in violation of the Fourth Amendment ordinarily must be suppressed under the exclusionary rule. *Segura*, 468 U.S. at 804.

The exclusionary rule does not apply, however, when the police obtain evidence in "objectively reasonable reliance" on a duly issued search warrant, even if that search warrant is subsequently invalidated. *Leon*, 468 U.S. at 922;[3] *see also United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005) (applying the *Leon* exception to warrant that was overbroad). This good-faith exception does not justify officers' reliance on a duly issued search warrant when:

> (1) the supporting affidavit or testimony includes a false statement made knowingly and intentionally or with reckless disregard for the truth to mislead the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Ortiz-Cervantes*, 868 F.3d 695, 702–03 (8th Cir. 2017) (internal quotation

---

[3] The Supreme Court created the good-faith exception because the exclusionary rule's purpose of deterring police misconduct is not served when police execute a warrant relying on the probable cause determination of a neutral and disinterested judge rather than the police officer's assessment of the evidence. *See Herring*, 555 U.S. at 142; *Leon*, 468 U.S. at 916.

marks omitted).

When assessing whether the good-faith exception applies, courts consider factors including whether the warrant was issued by an unbiased judge, whether the officer who requested the warrant was the same officer who executed the warrant, whether there was probable cause supporting the search and whether the officer had a reasonable belief that the warrant was limited to a seizure of more particular items.  *See e.g.*, *Henderson*, 416 F.3d at 695.

Here, the parties do not dispute that the warrant was supported by probable cause, the judge issuing the warrant was unbiased and the officer conducting the search, Officer Ebert, was the same officer who requested the warrant.  And notably, the fact that Officer Ebert examined the cell phone's contents is "significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the searching officer's position would have possessed."  *United States v. Curry*, 911 F.2d 72, 78 (8th Cir. 1990).  Here, Officer Ebert included limitations on the cell phone search within the warrant application, and it is reasonable to believe that Officer Ebert therefore had knowledge that the search was limited to those items when executing the warrant.

Williams does not address these factors in his objections.  Instead, Williams argues that no reasonable officer would have believed the warrant was valid, and Officer Ebert's failure to determine that the warrant was defective requires suppression of the evidence obtained pursuant to the warrant.  Relying on *Groh v. Ramirez*, Williams contends that the good-faith exception does not apply when the warrant is obviously deficient.  540 U.S.

551, 558 (2004). But *Groh* is distinguishable from the circumstances here. The warrant at issue in *Groh* described the property to be seized as the entirety of the defendant's house, rather than specific items within the house. *Id.* at 554–55. Based on the general nature of the property description, the Supreme Court concluded that no reasonable officer could believe there was a valid description of property to be seized. *Id.* at 558. Here, in contrast, the warrant provides details as to the types of information that could be seized, including "stored contact information," "incoming/outgoing calls and text messages," "photographs and videos," "Internet and browsing history" and "social media communication." Although the warrant is not sufficiently particularized, the warrant's deficiency was not so obvious that a reasonable officer could not have executed the warrant in good-faith reliance on its validity. *See Ortiz-Cervantes*, 868 F.3d at 702–03. Accordingly, this Court finds that the good-faith exception to the exclusionary rule applies, and the evidence recovered during the search of Williams's cell phone need not be suppressed.

For these reasons, the Court overrules Williams's objections and adopts this portion of the R&R.

## ORDER

Based on the R&R, the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Roberto Antwan Williams's objections to the September 9, 2022 R&R, (Dkt. 73), are **OVERRULED**.

2. The September 9, 2022 R&R, (Dkt. 67), is **ADOPTED AS MODIFIED** as addressed herein.

3.      Defendant Roberto Antwan Williams's motion to sever counts, (Dkt. 23), is **DENIED**.

4.      Defendant Roberto Antwan Williams's motions to suppress evidence, (Dkts. 26, 48), are **DENIED**.

Dated:  December 2, 2022

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge