UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,

Plaintiff,

v.

Roberto Antwan Williams,

Defendant.

File No. 21-cr-254 (ECT/LIB)

**OPINION AND ORDER**

---

Katharine T. Buzicky, United States Attorney's Office, St. Paul, MN, and Ebenezer K. Gyasi, United States Attorney's Office, Minneapolis, MN, for Plaintiff United States of America.

Roberto A. Williams, *pro se*.

---

Defendant Roberto Antwan Williams has filed an amended motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that he received ineffective assistance from his trial and appellate counsel. ECF No. 206.[1] On August 29, 2023, after a five-day trial held before United States District Judge Wilhelmina M. Wright, a jury found Williams guilty of two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). *See* ECF No. 131. On March 6, 2024, Williams

[1] Williams filed his second § 2255 motion, ECF No. 206, the same day as his first § 2255 motion, ECF No. 204, but before the first motion was adjudicated on the merits. Because the second § 2255 motion was filed before the first § 2255 motion was decided, the second motion is not barred by the second-or-successive rule in § 2255(h). *See United States v. Sellner*, 773 F.3d 927, 931 (8th Cir. 2014). It is instead construed as a motion to amend. *See id.* Williams's second (amended) motion, ECF No. 206, will therefore be treated as operative, and the first motion denied as moot.

was sentenced to 120 months' imprisonment on each count, to run concurrently, followed by three years' supervised release on each count, also to run concurrently.[2] *See* ECF No. 173. Williams appealed both his conviction and sentence, *see* ECF No. 176, which the Eighth Circuit affirmed on March 18, 2025, *United States v. Williams*, 131 F.4th 652 (8th Cir. 2025). The Eighth Circuit denied Williams's petition for rehearing on May 19, 2025, and the Supreme Court denied certiorari on January 20, 2026. *United States v. Williams*, No. 24-1582, 2025 WL 1435522 (8th Cir. May 19, 2025); *Williams v. United States*, --- S.Ct. ---, 2026 WL 135779 (Jan. 20, 2026). Williams is currently serving his sentence at the Federal Correctional Institution in Danbury, Connecticut, with a projected release date of May 21, 2029. *See Find an inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Oct. 26, 2026).

Alleging fourteen grounds of ineffective assistance of his trial or appellate counsel, Williams claims that his conviction and sentence should be vacated, and he seeks a new trial or, alternatively, resentencing. *See* ECF No. 206. Williams also seeks an evidentiary hearing and appointment of counsel. *See id.*

The motions will be denied. Williams fails to demonstrate that his counsel's performance was ineffective under the two prongs for § 2255 relief, constitutionally deficient performance and prejudice, established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Williams's request for an evidentiary hearing and appointment

---

[2] The case was reassigned to United States District Judge Ann D. Montgomery on December 5, 2023, upon Judge Wright's retirement. *See* ECF No. 144. Judge Montgomery presided over Williams's sentencing.

of counsel will be denied because Williams is conclusively not entitled to any relief and the interests of justice do not require appointment of counsel. Finally, no certificate of appealability shall issue.

I

Williams was indicted by a grand jury on November 23, 2021, on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 10. The indictment stemmed from two separate incidents. *See Williams*, 131 F.4th at 655. As to Count One, on July 31, 2020, St. Cloud Police pulled over a car driven by Williams's fiancée, Bianca Ellison, in which Williams was riding as a passenger, after identifying the vehicle as connected to a reported robbery and assault with a firearm. *Id.* Police searched the car and found "a 9mm Smith & Wesson handgun, a magazine, and ammunition in the glove compartment." *Id.* As to Count Two, on November 13, 2020, Ms. Ellison brought her five-year-old son to St. Cloud Hospital after he accidentally shot himself with a firearm in the home Ms. Ellison shared with Williams. *Id.* at 656. A neighbor's surveillance camera recorded Williams disposing of a black backpack in a garbage bin outside the home soon after Ms. Ellison left for the hospital with her fatally injured son, and before Williams himself departed. *Id.* Police obtained a warrant to search the backpack and discovered two firearms inside. *Id.*

On August 29, 2023, after a five-day trial, a jury found Williams guilty on both counts. ECF No. 131. The subsequent Presentence Investigation Report ("PSR") applied a base offense level of 20 pursuant to U.S.S.G. §2K2.1(a)(4)(B), *see* ECF No. 149 ¶ 14, a two-level increase pursuant to U.S.S.G. §2K2.1(b)(1)(A) because three firearms were

involved, *see id.* ¶ 15,[3] and another two-level increase pursuant to U.S.S.G. §2K2.1(b)(4)(A) because one of the firearms was stolen, *see id.* ¶ 16. In addition, the PSR applied a four-level increase pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because Williams possessed firearms in connection with drug trafficking as well as assault. *See id.* ¶ 17.

Williams objected to the PSR's two-level increase from the base offense level for a stolen firearm because he disclaimed any responsibility for the theft. ECF No. 162 at 4. He also objected to the four-level increase for possession of a firearm in furtherance of another felony because he denied involvement in any associated drug distribution or robbery offense, neither of which he was charged with or convicted of. *Id*. at 4–5. And Williams objected to the PSR's criminal history calculation, which he claimed incorrectly incorporated his prior Indiana robbery and Illinois possession-of-firearms cases. *Id*. at 6–8. Specifically, Williams argued that the calculation should not include the Indiana case because he was released from custody more than fifteen years before the offenses at issue occurred, and that his prior Illinois convictions should not be included because these charges or their required predicate offenses were based on statutes that were now-declared facially unconstitutional. *Id*. at 6–11.

At sentencing, Judge Montgomery overruled Williams's objections. *See* ECF No. 185 at 6–14. Applying a criminal history category of VI and a total offense level of

[3] Paragraph 15 of the PSR contained a typographical error, referring to the 2-level increase for three firearms as pursuant to "U.S.S.G. §2K21.1(b)(1)(A)," rather than U.S.S.G. §2K2.1(b)(1)(A). There is no question that U.S.S.G. §2K2.1(b)(1)(A) was the applicable guideline, and that it was applied in substance at sentencing. *See* ECF No. 185 at 3–4 (applying two-level increase "because there were three or more firearms involved in the overall offense").

28, Judge Montgomery determined a Guideline range of 140 to 175 months' imprisonment and a supervised release range of 1 to 3 years applied. *See* ECF No. 175 at 1. Judge Montgomery initially sentenced Williams on February 28, 2024, to 121 months' imprisonment on each count, to run concurrently, *see* ECF No. 185 at 33, then subsequently reduced that sentence to 120 months' imprisonment on each count, to run concurrently, in order to comply with the 10-year statutory maximum imprisonment applicable at the time, *see* ECF No 173; ECF No. 183 at 3; *see also* 18 U.S.C. § 924(a)(2) (2020).

As explained above, Williams appealed both his conviction and sentence, *see* ECF No. 176, which the Eighth Circuit affirmed on March 18, 2025, *Williams*, 131 F.4th at 661. The Eighth Circuit denied Williams's petition for rehearing on May 19, 2025, and the Supreme Court denied certiorari on January 20, 2026. *See* ECF No. 206 at 1.

On March 23, 2026, Williams filed the operative amended pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, also seeking appointment of counsel and an evidentiary hearing. *See* ECF No. 206. Williams claims his counsel was deficient for failing to: (1) "adequately show" that his past Illinois adult convictions were unconstitutional and could not serve as valid predicate convictions; (2) file a *Brady* motion requiring the Government to disclose still-frame photographs from St. Cloud Hospital referenced in police records; (3) move to suppress evidence and statements obtained when Williams was interviewed by police at St. Cloud Hospital; (4) object to Government Exhibit 22 containing surveillance video from a neighbor's camera; (5) object to the admission of out-of-court statements from Williams's daughter, who did not testify at trial and was not subject to cross-examination; (6) litigate and appeal Williams's objection to

his exclusion from the review of juror questionnaires; (7) appeal Williams's overruled objection that the jury panel lacked minority jurors; (8) object to the Government telling the jury that Williams's five-year-old stepson died after accidentally shooting himself with one of the firearms charged in Count Two; (9) introduce dispatch evidence from Count One to impeach a police witness; (10) object to the on-scene show-up identification and out-of-court descriptions of Williams; (11) move to suppress the DNA sample used in Count One; (12) challenge the trial court's denial of a mistrial and its failure to "re-voir-dire" the jury after a seven-day midtrial break; (13) object during the Government's closing argument when it misstated evidence; and (14) object to the two-level enhancement under U.S.S.G. § 2K2.1(b)(1) for the number of firearms involved in the offense. *Id*. at 2–5.

The Government responds that Williams's fourteen grounds fail under the two prongs for § 2255 relief, constitutionally deficient performance and prejudice, established in *Strickland*, 466 U.S. at 687. *See* ECF No. 217 at 5, 7. According to the Government, Grounds One, Four, Six, Seven, Nine, Eleven, Twelve, and Thirteen of the motion fail because they are affirmatively contradicted by the trial record. *Id*. at 7. And the Government argues that the remaining Grounds Two, Three, Five, Eight, Ten, and Fourteen of the motion fail under the *Strickland* prejudice prong because the overwhelming trial evidence "leaves no 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). Furthermore, the Government argues that neither appointment of counsel nor an evidentiary hearing is warranted because Williams's legal theories are without merit and

"conclusively show that [Williams] is entitled to no relief." ECF No. 217 at 26–27 (quoting 28 U.S.C. § 2255(b)).

II

A

Federal prisoners may collaterally attack their convictions or sentences:

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.

28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426–27 (1962). To prevail on his claim of ineffective assistance of counsel, Williams must establish that (1) his counsel's performance "fell below an objective standard of reasonableness," *and* (2) this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687–88. This standard applies equally to both the trial and appellate levels. *See Smith v. Robbins*, 528 U.S. 259, 288–89 (2000). Williams "must show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). Though criminal defendants are entitled to competent representation, the Constitution "does not insure that defense counsel will recognize and raise every conceivable" argument. *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)).

Indeed, counsel cannot be found ineffective where counsel declines to raise a meritless claim. *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990). Similarly, it

is difficult to deem appellate counsel ineffective when counsel opts not to raise every nonfrivolous claim, but instead "select[s] from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288; *Jones v. Barnes*, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy."). Review of counsel's performance is "highly deferential," with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689–90 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). To overcome that presumption, Williams must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *Rice*, 449 F.3d at 897 ("[A] reasonable probability meaning a probability sufficient to undermine confidence in the outcome." (citation modified)).

Each of Williams's fourteen grounds raised in support of his § 2255 motion is evaluated in turn under the *Strickland* standard. Because Williams must satisfy both prongs, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

B

1

Williams argues that his trial and appellate counsel were ineffective because they "failed to adequately show" that his prior Illinois convictions for aggravated unlawful use of a weapon were unconstitutional and could not serve as valid predicates for an 18 U.S.C. § 922(g)(1) conviction. ECF No. 206 at 2. Specifically, Williams argues that his counsel "failed to properly present the relevant Illinois authorities" to demonstrate that because the Illinois Supreme Court now holds the statutes underlying those charges to be unconstitutional, the charges are "void and may not serve as valid predicate convictions." *Id*. Williams also claims that his counsel did not adequately show that he had previously attempted to vacate and expunge these convictions in 2019, prior to his federal charges. *Id*. And Williams argues that his counsel "failed to argue that the needless presentation of the full stack of prior convictions [was] unfairly prejudic[ial]." *Id*. According to Williams, "competent litigation . . . would have excluded or limited the prior-conviction evidence," resulting in a different trial, sentencing, and appeal outcome. *See id.*

The record demonstrates that Williams's trial and appellate counsel did object to the introduction of these past convictions based on Illinois caselaw, *People v. Aguilar*, 2 N.E.3d 321, 327 (Ill. 2013), and federal caselaw, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). *See* ECF No. 96 at 1–3; *Williams*, 131 F.4th at 659–61. In these cases, the Illinois Supreme Court and Seventh Circuit declared portions of the aggravated unlawful use of a weapon statute under which Williams was convicted to be unconstitutional. *Aguilar*, 2 N.E.3d at 327–28; *Moore*, 702 F.3d at 942. Citing additional relevant authorities

such as *Montgomery v. Louisiana*, 577 U.S. 190 (2016), and *In re N.G.*, 115 N.E.3d 102 (Ill. 2018), Williams's counsel argued that "[b]ecause Mr. Williams's firearms convictions are not valid, and under Illinois law cannot be used for any purpose, they are not relevant on the prior conviction element, or to any other fact of consequence in this case, and thus inadmissible under Fed. R. Evid. 401 and 402." ECF No. 96 at 3–5; *Williams*, 131 F.4th at 659 ("Therefore, Williams asserts, these convictions are void *ab initio* and cannot disqualify him from possessing a firearm under § 922(g)(1).").

Although Williams's trial and appellate counsel did not present evidence of Williams's attempts to vacate these convictions prior to the events underlying Counts One and Two, such a showing would have been irrelevant. In *Lewis v. United States*, the Supreme Court held that a felon is prohibited from possessing a firearm "despite the fact that the predicate felony may be subject to collateral attack on constitutional grounds." 445 U.S. 55, 65 (1980). "[A] convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, *before* obtaining a firearm"; however, "[federal] firearms prosecution does not open the predicate conviction to a new form of collateral attack." *Id*. at 67 (emphasis added). If a predicate conviction "is no longer open to attack in its own right because the defendant failed to pursue those remedies while they were available (or because *he did so unsuccessfully*), then he is without recourse." *Daniels v. United States*, 532 U.S. 374, 375 (2001) (emphasis added). In other words, the prior conviction must be vacated successfully. *Id*. Williams may have attempted to vacate his prior convictions; however, this carries no weight since he was ultimately unsuccessful.

Although Williams's trial and appellate counsel did not object to the introduction of his past convictions on Federal Rule of Evidence 403 grounds, it's difficult to see how this might have mattered. Rule 403 provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The Eighth Circuit has held that multiple prior convictions can be admitted in a felon-in-possession case where their probative value outweighs any danger of unfair prejudice under Rule 403. *See United States v. Richardson*, 40 F.4th 858, 865–67 (8th Cir. 2022) ("[T]he district court did not abuse its discretion in admitting evidence about Richardson's six prior convictions."); *United States v. Jones*, 266 F.3d 804, 812 (8th Cir. 2001) ("[I]t was not improper for the district court to allow the prosecution to present limited evidence of multiple felony convictions in order to sustain its burden of proof on that element of the crime." (citations omitted)). And any risk of undue prejudice is mitigated when the judge provides a limiting instruction to the jury on how to use past convictions. *United States v. Aldridge*, 664 F.3d 705, 715 (8th Cir. 2011). Here, Judge Wright instructed the jury to use Williams's prior convictions "only to help [the jury] decide whether the United States has proven that Mr. Williams has been convicted of a crime punishable by imprisonment for more than one year, as charged in Counts 1 and 2." ECF No. 160 at 991–92. Finally, counsel's invocation of *Old Chief v. United States*, 519 U.S. 172 (1997), would not have resulted in exclusion of Williams's prior convictions because unlike that case, the trial record here does not demonstrate that Williams stipulated to felon status. *See* ECF No. 160 at 1036 (reflecting parties' agreement that "there were no stipulations among the

parties"); *id.* at 1049 (closing argument discussing defendant's prior felony convictions); *id.* at 1084–85 (discussing elements of felon in possession offense). For all these reasons, then, this ground fails to support a claim of ineffective assistance of counsel on the deficient-performance prong.

2

Williams claims that his trial counsel failed to file a *Brady* motion or otherwise move to compel the Government to produce still-frame photographs and video from St. Cloud Hospital. ECF No. 206 at 2. Williams asserts that police reports referenced these photos, but they "were never produced in discovery." *Id.* According to Williams, the still-frame photographs, timestamped November 13, 2020, at 15:16 hours (the day of his stepson's death), showed Williams arriving at the hospital. *Id.* Although Williams's trial counsel did not file a *Brady* motion or otherwise move to compel the Government to produce this evidence, such a motion would have been without merit or, at minimum, the motion's absence would not have prejudiced his defense.

A *Brady* violation has three components: (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) "that evidence must have been suppressed by the [Government], either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."). "The evidence is not material and no prejudice can be shown unless there is a reasonable probability that the verdict

would have been different if the evidence had not been suppressed." *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008) (citations omitted).

Williams fails to identify why these still-frame photographs and video would have been favorable to him, identifying neither their exculpatory nor impeaching purpose. *See* ECF No. 206 at 2. He also does not claim that such evidence was suppressed by the Government, instead conceding that "police reports referencing this evidence were disclosed." *Id*. And he provides no support for a "reasonable probability" that the inclusion of this evidence would have changed the verdict. *See Tyndall*, 521 F.3d at 881.

Williams's alternative claim that his counsel should have moved to compel the Government to produce this evidence, independent of any *Brady* violation, fails for the same reason. Because Williams does not identify the significance of this evidence to his defense, he cannot establish that the evidence's inclusion would have affected the jury's decision-making with "a probability sufficient to undermine confidence in the outcome." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 694). Without demonstrating prejudice to the outcome of the case, Williams cannot prove a *Brady* violation or support his claim of ineffective assistance of counsel under either *Strickland* prong.

3

Williams argues that his trial counsel rendered ineffective assistance by failing to move to suppress evidence—including statements, gunshot residue test results, and Williams's phone—taken as a result of Williams's interactions with a police officer at St. Cloud Hospital. ECF No. 206 at 3. According to Williams, his counsel should have litigated "whether [Williams] was unlawfully seized under the Fourth Amendment,

whether the questioning was custodial for Miranda purposes, whether any consent was voluntary, and whether the resulting evidence should have been suppressed as fruit of an unlawful detention." *Id.* Although Williams's trial counsel did not move to suppress this evidence, such a motion on these Fourth Amendment grounds would have been meritless.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Circumstances to consider include the number of officers, the show or use of force, intimidation, threats, authoritative tone, and blocking of exits. *Id.*; *United States v. Drayton*, 536 U.S. 194, 203–04 (2002). Williams does not allege that these or any other factors were present to make him think he was not free to leave. Evidence from trial demonstrates that Williams willingly accompanied Officer Fletcher to a separate room to discuss the case. *See* ECF No. 158 at 669. Absent any evidence demonstrating Williams was unlawfully seized, any evidence obtained was not the fruit of an unlawful detention. *See Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963).

The same is true of the *Miranda* custody inquiry. A person is in custody if "all of the circumstances surrounding the interrogation" show that "a reasonable person would have felt [they were] not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citation modified). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (citation modified). Williams does not claim that any

factors indicating he was in custody were present here. Testimony presented at trial demonstrates that Williams voluntarily accompanied Officer Fletcher to a hospital family room for the interview and answered the officer's questions about how Williams learned of D.P.'s injury and drove D.P. to the St. Cloud hospital, and there is no evidence that Williams was not free to leave throughout that encounter. *See* ECF No. 158 at 663–72.

Additionally, trial evidence showed that Williams consented to the search of his phone, *id*. at 667–68, 672. Whether consent is voluntary "is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Our Eighth Circuit Court of Appeals instructs district courts to apply the following factors when determining whether consent is voluntary:

> individual characteristics such as [the person's] age and educational level, his knowledge of his *Miranda* rights, and whether he was under the influence of alcohol or narcotics when consent was given, as well as external factors including the length of his detention, any evidence of intimidation or promises by police, his custodial or arrest status at the time consent was given, where the consent was given, and whether he was silent during the search.

*United States v. Becker*, 333 F.3d 858, 861 (8th Cir. 2003). Williams does not allege any such individual characteristics or external factors relevant to his ability to consent to the phone search, nor to the swab for gunshot residue. A motion to suppress this evidence based on unlawful seizure, custodial interrogation without *Miranda* warnings, involuntary consent, or fruit of the poisonous tree thus would have been meritless. Effective trial counsel need not raise meritless claims. *Larson*, 905 F.2d at 219. Accordingly, this ground

fails to support a claim of ineffective assistance of counsel on the deficient-performance prong.

4

Williams claims that his trial counsel failed to object under Federal Rules of Evidence 901 and 403 to Government Exhibit 22, a surveillance video from a neighbor's camera, on the grounds that the video was of poor quality and the Government failed to properly authenticate it. ECF No. 206 at 3 (alleging the recording was "so poor in quality that Officer Hoard [sic] acknowledged it was difficult to determine the sex or race of the person shown"). Williams claims that his counsel's failure to object "allowed the jury to see and rely on a blurry, weakly authenticated exhibit carrying an unwarranted aura of objectivity." *Id.*

An objection to this evidence on Federal Rule of Evidence 901 grounds would have been meritless. To properly authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "To meet this standard, the proponent need only demonstrate a rational basis for its claim that the evidence is what the proponent asserts it to be." *United States v. Coohey*, 11 F.3d 97, 99 (8th Cir. 1993). Here, the Government properly laid a foundation through Investigator Hord's testimony before offering the exhibit at trial. Investigator Hord recounted the steps he took to obtain the recording from the neighbor, explained how the motion-activated surveillance camera worked, and identified the residence and vehicle in the video as Williams's. ECF No. 159 at 687–94. A challenge to Government

Exhibit 22's authentication would have been without merit, and effective trial counsel need not raise meritless claims. *See Larson*, 905 F.2d at 219.

Objecting to the admissibility of the surveillance video evidence on Federal Rule of Evidence 403 grounds also would have been meritless. Rule 403 provides that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Unfair prejudice connotes "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee's note to 1972 Proposed Rules. The poor quality of evidence "does not preclude its admissibility." *United States v. McCoy*, 70 F.4th 498, 500 (8th Cir. 2023); *United States v. De La Torre*, 907 F.3d 581, 591–92 (8th Cir. 2018) (finding audio recording's "admittedly poor quality" did not render it "wholly untrustworthy" where the recording sufficiently "provide[d] the jury with the gist of the conversation" (citation modified)); *United States v. Munoz*, 324 F.3d 987, 992 (8th Cir. 2003) (finding a video recording admissible where its poor quality "did not call into question its trustworthiness"). Instead, poor quality "goes to the weight of the evidence, not its admissibility," and where the "recorded conversation is . . . audible enough to provide the jury with the gist of the conversation, . . . the defendant may offer his own account to clear up any ambiguities that might be raised." *United States v. Blair*, No. 4:21-CR-3155, 2022 WL 1720150, at *1 (D. Neb. May 27, 2022). Here, the poor quality of Government Exhibit 22 went to its weight rather than its admissibility.

Although Williams's trial counsel did not object to the exhibit, she cross-examined Investigator Hord about the video's poor quality. *See* ECF No. 159 at 703–07. For

instance, she questioned Investigator Hord as to whether "it's possible that you misidentified someone based on the quality of the video?" to which the investigator replied, "[i]f that is the facts, then possibly, yes." *Id*. at 707. Williams's counsel opted to address the video's poor quality through cross-examination rather than objection, and under *Strickland*, his trial counsel's strategic choice is "virtually unchallengeable." 466 U.S. at 689–90. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the deficient-performance prong.

5

Williams claims that his trial counsel failed to object on *Crawford* and hearsay grounds to "the admission of out-of-court statements attributed to [Williams's] 15-year-old daughter, K.G.," who neither testified nor was cross-examined at trial. ECF No. 206 at 3. Williams cites to the trial transcript, ECF No. 159 at page 791, to support his argument. *Id*. But Williams does not identify any testimonial statements from K.G. that were admitted at trial for their truth. At the specific page Williams references, the witness, Officer Ebert, merely recounted K.G.'s date of birth and age. *See* ECF No. 159 at 791. Williams cannot show a reasonable probability that the trial's outcome would have been different absent admission of these references. *See Strickland*, 466 U.S. at 694. This ground fails to support a claim of ineffective assistance of counsel on the deficient-performance prong.

6

Williams claims that his appellate counsel[4] failed to appeal his overruled objection to his exclusion from the in-chambers review of the juror questionnaire binders. ECF No. 206 at 3. Williams's appellate counsel did not argue this objection on appeal. *See Williams*, 131 F.4th 652. However, appellate counsel need not raise every nonfrivolous claim, but rather "may select from among them in order to maximize the likelihood of success on appeal." *See Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

There exists no clear on-point authority as to whether criminal defendants have a right under Federal Rule of Criminal Procedure 43 to be present when counsel reviews jury questionnaires. Rule 43 requires that the defendant must be present at "every trial stage, including jury impanelment," but it has not been definitively determined whether reviewing juror questionnaires is a part of that impanelment. The Due Process Clause guarantees defendants a "right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge . . . to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 108 (1934)). But "[w]hen there is no indication

[4] Williams initially asserted his trial counsel rendered ineffective assistance on this ground, but he later conceded that his trial counsel objected to his absence during the review of the juror questionnaire binders, although that objection was overruled. ECF No. 206 at 3; *see* ECF No. 157 at 6–7. Accordingly, only Williams's appellate counsel's actions will be considered here.

the defendant could have done or gained anything had he attended the hearing, there is no due process violation." *Middleton v. Roper*, 455 F.3d 838, 852 (8th Cir. 2006).

Williams does not identify anything he could have done or gained had he been present for the in-chambers review of the juror questionnaires. Declining to press on appeal an unsettled claim of uncertain merit in favor of stronger arguments is the kind of paring that *Smith* and *Jones* protect. Williams therefore cannot overcome the strong presumption that his appellate counsel's selection of issues fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Nor can he show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Accordingly, this ground fails to support a claim of ineffective assistance of counsel under either *Strickland* prong.

7

Williams argues that his appellate counsel rendered ineffective assistance by failing to argue on appeal Williams's overruled objection to the lack of any minorities, particularly African Americans, in the venire. *See* ECF No. 206 at 3; *see also* ECF No. 154 at 45–46 (objection); ECF No. 160 at 926–28 (renewed objection). It is true that Williams's appellate counsel did not argue this objection on appeal. *See Williams*, 131 F.4th 652.

An appeal of Williams's overruled objection to the lack of African Americans in the venire would have failed on the merits. "[T]he fair-cross-section requirement [is] fundamental to the jury trial guaranteed by the Sixth Amendment . . . [and] make[s] available the commonsense judgment of the community." *Taylor v. Louisiana*, 419 U.S.

522, 530 (1975). To establish a fair-cross-section requirement violation, Williams would need to show

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). African Americans are a distinctive group in the community. *United States v. Garcia*, 991 F.2d 489, 491 (8th Cir. 1993). But Williams provides no evidence to prove the second and third elements of a fair-cross-section requirement violation. Williams does not cite any statistics comparing the prospective jury panel's racial and ethnic makeup to that of the community. *Duren*, 439 U.S. at 364 ("[T]he defendant must demonstrate the percentage of the community made up of the group alleged to be underrepresented, for this is the conceptual benchmark for the Sixth Amendment fair-cross-section requirement."). Nor does Williams identify any "systematic exclusion" of African Americans during the jury-selection process. *Id*. at 366 (holding defendant proved "systematic exclusion" by showing that "a large discrepancy occurred not just occasionally but in every weekly venire for a period of nearly a year"). "Ethnic and racial disparities between the general population and jury pools do not by themselves . . . establish the 'systematic exclusion' of allegedly under-represented groups." *United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998). "Absent proof that certain racial or ethnic groups face obstacles in the [jury-selection] process, [Defendant's] claim must fail." *Id*. Counsel, particularly at the appellate level, has no obligation to

present meritless claims. *Larson*, 905 F.2d at 219. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the *Strickland* deficient-performance prong.

8

Williams claims that his trial counsel failed to object under Federal Rule of Evidence 403 to the Government "repeatedly mention[ing]" to the jury that Williams's five-year-old stepson D.P. accidentally shot and killed himself with one of the firearms involved in Count Two. ECF No. 206 at 4. Williams argues that as a result, the jury decided Count Two "under the shadow of a tragic child death rather than solely on the elements of the charged offense." *Id*. Williams's trial counsel did not object to the introduction of this evidence at trial. However, such an objection would likely have been meritless, and, at the very least, the exclusion of this evidence would not have affected the verdict given the overwhelming amount of other evidence.

Federal Rule of Evidence 403 states that a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Unfair prejudice connotes "an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee's note to 1972 Proposed Rules; *Old Chief v. United States*, 519 U.S. 172, 180 (1997) ("The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."). "[A]ll admissible evidence tends to be prejudicial to one side or the other—the relevant inquiry is whether it is unfairly so."

*United States v. Buckner*, 868 F.3d 684, 689 (8th Cir. 2017). When conducting this balancing, courts must also appreciate "the offering party's need for evidentiary richness and narrative integrity in presenting a case." *Old Chief*, 519 U.S. at 183. A jury "is entitled to know about the context of the crime and any events that help explain the context." *United States v. Crow Ghost*, 79 F.4th 927, 935–36 (8th Cir. 2023) (quoting *United States v. Mora*, 81 F.3d 781, 784 (8th Cir. 1996)).

Particularly in felon-in-possession cases, "a jury rarely has direct evidence of a defendant's knowledge of a firearm's presence, and therefore knowledge is generally established through circumstantial evidence." *United States v. Mann*, 701 F.3d 274, 305 (8th Cir. 2012) (quoting *United States v. Smith*, 508 F.3d 861, 867 (8th Cir. 2007) (citation modified)). In these cases, the Eighth Circuit has repeatedly found that the probative value of evidence concerning shootings closely connected to the charged possession is not substantially outweighed by the danger of unfair prejudice. *Buckner*, 868 F.3d at 689 (admitting evidence of a shooting that occurred shortly before the defendant's arrest for possession); *United States v. Cook*, 842 F.3d 597, 602 (8th Cir. 2016) (finding a "strong temporal and logical connection" between shooting and charged possession); *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014) (admitting shooting evidence since "it helps establish ownership or control of the weapon"); *United States v. Taylor*, 122 F.3d 685, 689 (8th Cir. 1997) (finding an "undeniably close relationship" between shooting and possession charge).

The evidence at issue here has a strong temporal and logical connection to Williams's Count Two possession charge. Police began investigating the events

underlying Count Two after they received word from St. Cloud Hospital that a young boy had died of a gunshot wound to the head. *See* ECF No. 158 at 662. After talking with Williams and his family at the hospital, police located the residence where the shooting took place and noticed a neighbor's surveillance camera. *See* ECF No. 159 at 680–98. That camera's footage showed Williams throwing away a backpack in the residence's trashcan prior to leaving for the hospital. *Id*. Police then searched the trash and found the backpack with two firearms inside. *Id*. at 750–51. The shooting occurred the same day that police recovered the firearms from Count Two. *See id*. at 747–60. Logically, the shooting is what led the police to recover those firearms. The shooting evidence is also highly probative for contextualizing the circumstances and establishing the elements for conviction. Without this evidence, the jury would not have the context to understand how the police ended up at Williams's residence. The shooting also helps to establish that there was a working firearm located within Williams's residence, making his knowledge of the firearm more likely. This evidence has high probative value that is not substantially outweighed by the danger of unfair prejudice. A Rule 403 objection to this evidence would likely have been overruled, and Williams's counsel was not deficient for failing to bring one.

Even if a Rule 403 objection could have been successful, Williams cannot demonstrate that his counsel's failure to raise one prejudiced his case. To assess prejudice under the second *Strickland* prong, courts must consider "whether it is 'reasonably likely' the result would have been different. . . . [and] [t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011)

(citing *Strickland*, 466 U.S. at 693, 696); *Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996) ("Speculation as to what the district court would have done . . . is not equivalent to a showing of prejudice sufficient to undermine confidence in the outcome of the trial."). Importantly, "[w]hen there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice." *Christenson v. Ault*, 598 F.3d 990, 997 (8th Cir. 2010) (finding no reasonable probability of a different result "[g]iven the nature and extent of incriminating evidence presented at trial"); *Harrington*, 562 U.S. at 112–13 (finding "ample basis" to uphold a defendant's conviction even if his counsel was deficient, due to "sufficient conventional circumstantial evidence pointing to [the defendant's] guilt").

The Government introduced an overwhelming amount of evidence on Count Two beyond the evidence of D.P.'s accidental shooting. That included: interviews with Williams and his family at St. Cloud Hospital; surveillance camera footage of Williams placing the backpack containing the two firearms in the trashcan; the recovered backpack and two firearms; analysis of DNA swabbed from the purple Taurus firearm showing strong support for Williams's inclusion; and a photograph from Williams's cellphone of the purple Taurus firearm with the caption "My new toy." *See* ECF No. 160 at 1053–57. The overwhelming evidence of Williams's guilt in this case forecloses any finding of prejudice. Under either *Strickland* prong, Williams fails to support a claim of ineffective assistance.

9

Williams claims that his trial counsel failed to introduce dispatch evidence to impeach witness Sergeant Baumann at trial. ECF No. 206 at 4. On cross-examination,

defense counsel asked Sergeant Baumann to confirm whether, after Officer Eckberg asked him to pull over a silver Envoy model vehicle, he said there were two of these vehicles and asked which one to pull over. ECF No. 158 at 657. Sergeant Baumann denied that he had done so. *Id*. According to Williams, there was "dispatch evidence from Count One showing that Sergeant Baumann was confused and did not see the vehicle that Officer Eckberg told him to pull over." ECF No. 206 at 4. Williams argues that his counsel rendered ineffective assistance by failing to introduce this evidence during cross-examination to challenge Sergeant Baumann's testimony. *See id.* Because of Williams's vague reference to "dispatch evidence from Count One," it is difficult to determine whether such evidence even exists, let alone whether it actually shows Sergeant Baumann was confused over the vehicle identification. As a result, it is difficult to establish whether there would have been any merit to using this evidence to impeach Sergeant Baumann.

Assuming this evidence does exist and shows what Williams claims it does, his trial counsel's decision not to use it for impeachment purposes was a reasonable strategic choice that did not prejudice his case. "We generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. Some strategy decisions, however, are so unreasonable that they can support a claim of ineffective assistance of counsel." *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001) (citation modified). "A failure to impeach constitutes ineffective assistance when there is a reasonable probability that, absent counsel's failure, the jury would have had reasonable doubt of the petitioner's guilt." *Whitfield v. Bowersox*, 324 F.3d 1009, 1018 (8th Cir.

2003), *vacated in part on other grounds*, 343 F.3d 950 (8th Cir. 2003); *compare United States v. Orr*, 636 F.3d 944, 953–54 (8th Cir. 2011) (finding defendant failed to show the "requisite prejudice" from counsel's failure to impeach a witness given the "extensive corroborating evidence from other sources"), *and Potter v. Buckner*, No. 4:24-CV-245-ZMB, 2026 WL 878675, at *4 (E.D. Mo. Mar. 31, 2026) (finding counsel was not ineffective for failing to impeach a witness where counsel "established the same point through another witness"), *with Driscoll v. Delo*, 71 F.3d 701, 711 (8th Cir. 1995) (finding counsel ineffective where a failure to impeach "was a breach with so much potential to infect other evidence").

Although Williams's counsel did not impeach Sergeant Baumann using "dispatch evidence," counsel did highlight the sergeant's potential confusion in identifying the vehicle through different lines of questioning. ECF No. 158 at 648. Counsel asked Sergeant Baumann, "there was a little confusion by you as to which car to stop; isn't that correct?" Sergeant Baumann denied he was confused, but he conceded that he stopped a Trailblazer vehicle despite being told to stop an Envoy. *Id*. Williams's counsel also asked a different witness, Officer Eckberg, "you wanted them to stop a silver Envoy . . . [but] it was a gray Trailblazer that was actually stopped; isn't that correct?" The officer confirmed. *Id*. at 605. In other words, Williams's counsel employed a different trial strategy, but counsel still established the same cause for confusion. Therefore, Williams cannot establish that the evidence's inclusion to impeach Sergeant Baumann would have affected the jury's decision-making with a probability sufficient to undermine confidence in the outcome. *Rice*, 449 F.3d at 897.

10

Williams argues that his trial counsel failed to object on hearsay, Confrontation Clause, and other grounds to the admission of the robbery victim's on-scene description and show-up identification of the suspect, even though the victim did not testify at trial. ECF No. 206 at 4. Trial evidence was introduced that the robbery victim described the suspect as "a black male with dreadlocks, wearing a white t-shirt and pajama pants." *See* ECF No. 158 at 632. Williams's counsel objected to the admission of the victim's 911 call on Confrontation Clause and hearsay grounds, and Williams also lodged a "standing objection" to introduction of the information during trial. ECF No. 112 at 1–4; ECF No. 158 at 578–79. Though these objections were overruled, ECF No. 120 at 7–9 (order on motions in limine); ECF No. 158 at 578–79, trial counsel raised precisely the objections Williams claims were not raised.

Following his 911 call, the victim did identify Williams in an on-scene show-up identification conducted by police. ECF No. 158 at 612. However, the Government explicitly chose not to use this at trial, making its decision clear at a sidebar with the judge and defense counsel. *Id*. ("[The victim] did identify the defendant as the man who had robbed him. Now, obviously we don't intend to elicit that information."). Since this show-up identification was never brought into trial, trial counsel did not need to object to its admissibility on any grounds. Accordingly, Williams cannot support a claim of ineffective assistance of counsel on the *Strickland* deficient-performance prong regarding an on-scene show-up identification that was not used at trial.

11

Williams argues that his trial counsel rendered ineffective assistance by failing to seek a *Franks* hearing to suppress the DNA sample in Count One on the grounds "the warrant [used to obtain it] rested on a material falsehood or reckless disregard for the truth." ECF No. 206 at 4. According to Williams, the warrant misdescribed him as "approximately 6′6″ tall and 250 pounds," when in fact he is approximately five feet eight inches tall and 150 pounds. *Id*. Williams's trial counsel did not petition for a *Franks* hearing or otherwise move to suppress the DNA evidence. However, such a motion would have been without merit. To obtain a *Franks* hearing, Williams must

> first demonstrate that the law enforcement official deliberately or recklessly included a false statement, or omitted a truthful statement from his warrant affidavit. Next, the defendant must show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood.

*United States v. Mashek*, 606 F.3d 922, 928 (8th Cir. 2010) (citations omitted); *see Franks v. Delaware*, 438 U.S. 154, 172 n.8 (1978) (noting petitioner conceded "if the warrant affiant had no reason to believe the information was false, there was no violation of the Fourth Amendment" and "if what is left is sufficient to sustain probable cause, the inaccuracies are irrelevant").

Williams provides no evidence beyond conclusory allegations to demonstrate that this inaccurate description was made deliberately or recklessly. In fact, during redirect examination at trial, the St. Cloud Police Department investigator who wrote the warrant

testified that since he did not have prior contact with Williams, he obtained this description from past Department of Vehicle Services records. ECF No. 159 at 740–41. Williams also does not show that the warrant would lack probable cause if this inaccurate description were excluded. There is no reference to what else the warrant contained, nor is there any detailed allegation that whatever remained would be insufficient to establish probable cause.

Nor was the warrant insufficient on other grounds. Obtaining DNA from a person constitutes a search under the Fourth Amendment. *See Maryland v. King*, 569 U.S. 435, 446 (2013). DNA collection thus requires a warrant that describes the person "with sufficient particularity as to enable the executing officer to locate and identify the premises [or person] with reasonable effort." *United States v. Thomas*, 263 F.3d 805, 807 (8th Cir. 2001) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)). This particularity standard can be met even when the warrant is not entirely accurate, so long as enough identifying information is included for "practical accuracy rather than technical nicety." *United States v. Johnson*, 541 F.2d 1311, 1313–14 (8th Cir. 1976). Courts routinely have upheld warrants "[w]here one part of the description of the premises [or person] to be searched is inaccurate, but the description has other parts which identify the place [or person] with particularity." *Gitcho*, 601 F.2d at 371; *compare United States v. Valentine*, 984 F.2d 906, 909 (8th Cir. 1993) (upholding search warrant for premises since it described the building in detail despite misidentifying the address number), *and Johnson v. George*, No. 1:09-CV-482, 2009 WL 2447960, at *1, *3 (W.D. Mich. Aug. 7, 2009) (upholding search warrant for DNA because it included the correct middle and last names,

date of birth, and residence despite an incorrect first name), *with Thomas*, 263 F.3d at 807 (finding warrant defective where it misidentified the address and apartment number and "[t]his erroneous address was the only information in the warrant identifying the location to be searched"). Here, the warrant's inaccurate description of Williams's height and weight is not enough to justify a *Franks* hearing.

Finally, although Williams's trial counsel did not petition for a *Franks* hearing, he did cross-examine Government witness Investigator Atkinson about the warrant's inaccurate description of Williams's height and weight. ECF No. 159 at 738–42. He highlighted the disparity between the warrant's described height of Williams and his actual height, even asking Williams to stand next to him to demonstrate the description's clear inaccuracy. *Id.* Although Williams's counsel opted to address the warrant's inaccurate description through cross-examination rather than requesting a *Franks* hearing, under *Strickland*, trial counsel's strategic choice is "virtually unchallengeable." 466 U.S. at 690–91. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the deficient-performance prong.

12

Williams argues his appellate counsel failed to "challenge the trial court's denial of a mistrial, and failure to re-voir-dire the jurors, after an unexpected seven-day midtrial break." ECF No. 206 at 4. Although trial counsel moved for a mistrial on these grounds, *see* ECF No. 160 at 925, Williams's appellate counsel did not argue this issue on appeal, *see Williams*, 131 F.4th 652. But appellate counsel need not raise every nonfrivolous

claim, instead "select[ing] from among them in order to maximize the likelihood of success on appeal." *See Smith*, 528 U.S. at 288; *Jones*, 463 U.S. at 754.

Williams's argument that the trial court's "denial of a mistrial and failure to re-voir-dire the jurors" is based on speculation that the seven-day break "created a substantial risk of outside exposure." ECF No. 206 at 4. But Williams provides no specific evidence of any jury contact, communication, or tampering beyond the existence of the seven-day break in the trial, and thus cannot demonstrate prejudice. *See United States v. Gay*, 967 F.2d 322, 326 (9th Cir. 1992) (finding defendants "cited no basis, systemic or otherwise, for suspecting that some jurors might have been tainted during the recess" and thus "have not demonstrated substantial prejudice").

Even if Williams had alleged that such contact actually occurred, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Rather, "if a party shows that outside contact with the jury presents a reasonable possibility of prejudice to the verdict, he is entitled to a hearing on the matter." *United States v. Tucker*, 137 F.3d 1016, 1030 (8th Cir. 1998); *United States v. Herndon*, 156 F.3d 629, 635 (6th Cir. 1998) ("Where a colorable claim of extraneous influence has been raised, however, a '*Remmer* hearing' is necessary."). Whether a *Remmer* hearing is "required depends on both the gravity of the alleged misconduct and the substantiality of the movant's showing of misconduct." *Tucker*, 137 F.3d at 1031. "[A] defendant who makes an allegation of serious misconduct by a juror, supported by evidentiary materials with significant indicia of reliability, is entitled to a more thorough investigation of his complaint." *Id*. at 1032. Williams alleges

no colorable claim of extraneous influence sufficient to show a reasonable possibility of prejudice to the verdict. Counsel, particularly at the appellate level, has no obligation to present meritless claims. *See Larson*, 905 F.2d at 219; *Smith*, 528 U.S. at 288. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the *Strickland* deficient-performance prong.

13

Williams argues his trial counsel rendered ineffective assistance by "failing to object during closing argument when the Government misstated the evidence by telling the jury that [Williams's] DNA was found on both firearms in Count Two." ECF No. 206 at 5. This argument is contradicted by the record, which shows that Williams's trial counsel immediately objected to the misstatement. ECF No. 160 at 1055 ("Ms. Mohrlant: Objection, misstates the evidence."). The objection was overruled, but the prosecutor still clarified the expert's testimony that there was "low and moderate support" for Williams's DNA on one of the firearms and "strong support" for his DNA on the other. *Id*. Because trial counsel did in fact object, Williams cannot show that his counsel's performance fell below an objective standard of reasonableness for "failing to object" to the misstatement, as he argues. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the *Strickland* deficient-performance prong.

14

Williams argues that his trial counsel rendered ineffective assistance by "failing to object to the two-level enhancement for number of firearms" and "fail[ing] to require the court to properly analyze whether the enhancement was correctly applied under U.S.S.G.

§ 2K2.1(b)(1) and the grouping rules." ECF No. 206 at 5. The Sentencing Guidelines grouping rules serve to "determin[e] a single offense level that encompasses all the counts of which the defendant is convicted." U.S.S.G. ch. 3, pt. D, introductory cmt. Accordingly, "[a]ll counts involving substantially the same harm shall be grouped together." U.S.S.G. §3D1.2. Grouping applies "[w]hen the offense level is determined largely on the basis of . . . some other measure of aggregate harm." U.S.S.G. §3D1.2(d). That category covers unlawful firearm possession offenses under §2K2.1, which applies specific offense characteristics based on the number of firearms involved. *See* U.S.S.G. §2K2.1(b)(1).

Williams was found guilty on two counts of unlawful firearm possession; thus, these counts should be grouped together under § 3D1.2(d) to determine if the §2K2.1(b)(1) specific offense characteristics apply. The jury determined Williams possessed one firearm as charged in Count One of the Indictment and two firearms as charged in Count Two. ECF No. 131. Grouped together, the two counts involved three firearms, and the §2K2.1(b)(1) two-level enhancement applied. Although Williams's trial counsel did not object to this two-level enhancement, *see* ECF No. 162 (Williams's position on sentencing), such an objection would have been meritless, and counsel cannot be found ineffective for declining to raise a meritless claim. *See Larson*, 905 F.2d at 219. Accordingly, this ground fails to support a claim of ineffective assistance of counsel on the *Strickland* deficient-performance prong.

III

Williams requests an evidentiary hearing and appointment of counsel. *See* ECF No. 206 at 5. Both requests will be denied. Section 2255 requires an evidentiary hearing on

the motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A motion "can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Woods v. United States*, 567 F.2d 861, 863 (8th Cir. 1978) ("[M]erely stating unsupported conclusions will not suffice."). Here, Williams's claims lack evidentiary support, are contradicted by the record, and otherwise do not entitle him to relief under § 2255. Accordingly, Williams is not entitled to an evidentiary hearing.

To ensure adequate representation of defendants, 18 U.S.C. § 3006A provides that "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2). "If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a [moving party] who qualifies to have counsel appointed under 18 U.S.C. § 3006A." Rule 8(c), Rules Governing Section 2255 Cases in the United States District Courts. "The appointment of counsel is discretionary when no evidentiary hearing is necessary." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). Because no evidentiary hearing is warranted here, the decision to appoint counsel is discretionary. "In exercising its discretion, a court should first determine whether the § 2255 movant has presented a non-frivolous claim." *United States v. Arcoren*, 633 F. Supp. 2d 752, 757 (D.S.D. 2009)

(citing *Abdullah v. Norris*, 18 F.3d 571, 573 (8th Cir. 1994)). "If the movant has presented only claims that are frivolous or clearly without merit, the court should dismiss the case on the merits without appointing counsel." *Id.* If presented with a non-frivolous claim, "the court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the movant and the court to such an extent that 'the interests of justice so require it.'" *Id.* (quoting 18 U.S.C. § 3006A(a)(2)(B)). In making that determination, "the court should consider the legal and factual complexity of the case, the movant's ability to investigate and present the claim and any other relevant factors." *Id.* (citing *McCall v. Benson*, 114 F.3d 754, 756 (8th Cir. 1997)). As explained above, each of Williams's fourteen grounds is contradicted by the record or otherwise clearly without merit. Even if his claims were non-frivolous, the remaining factors do not support appointing counsel. This case presents no unusual legal or factual complexity, and Williams's filings demonstrate that he is a sophisticated pro se litigant capable of investigating and presenting his claims without the assistance of counsel.

Finally, Williams has not made "a substantial showing . . . that the issues [he raised] are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). Therefore, no certificate of appealability shall issue. *See id.*

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Roberto Antwan Williams's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [ECF No. 204] is **DENIED AS MOOT**.

2. Defendant Roberto Antwan Williams's Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [ECF No. 206] is **DENIED**.

3. Defendant's request for appointment of counsel [ECF No. 205] is **DENIED**.

4. Defendant's request for an evidentiary hearing is **DENIED**.

5. No certificate of appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 27, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court